23265. REAGAN v. REAGAN.

SUBMITTED DECEMBER 13, 1965—DECIDED JANUARY 10, 1966.

*Clower & Royal, Robert L. Royal,* for appellant.

*Rogers, Magruder & Hoyt, Dudley B. Magruder, Jr.,* for appellee.

MOBLEY, Justice. The appellant, William Alfred Reagan, filed a petition for divorce against his wife, Ester Naoma Reagan, in October, 1963, alleging as ground for divorce that she had wilfully deserted him in December, 1960, and has continued such desertion since that time. The defendant wife, appellee here, filed an answer and cross action which, as amended, denied the desertion of appellant by her and alleged wilful desertion of her on the part of appellant since January, 1961, and prayed for alimony and for a divorce. This action has been tried once before and this is the third appearance of this case before this court. On the first trial the jury returned a verdict granting·

both parties a divorce and awarding alimony to Mrs. Reagan. In *Reagan v. Reagan,* 220 Ga. 587 (140 SE2d 841) this court held that such verdict was inconsistent in view of the pleadings and evidence and ordered a retrial of the case. In *Reagan v. Reagan,* 221 Ga. 173 (143 SE2d 736) this court held that the new trial previously ordered by the court rendered defendant's motion for judgment notwithstanding the verdict a nullity and ordered the trial court to dismiss the motion.

On the re-trial of the case, the jury returned a verdict in favor of the appellee for divorce and awarded her alimony. The trial court entered judgment and decree on the verdict and also awarded appellee $750 as attorney's fees. The appeal is from that judgment on assignments of error stated hereafter.

■ Appellant's first assignment of error is upon the verdict as being contrary to law and the principles of equity and justice, contrary to the evidence, without supporting evidence, and decidedly and strongly against the weight of the evidence. The established rule here as to appellate review of evidence to uphold a verdict is that if there is any evidence to suport the verdict this court will not disturb the verdict or the judgment or decree of the court rendered thereon. *Kitchin v. Kitchin,* 219 Ga. 417 (133 SE2d 880); *Middleton v. Waters,* 205 Ga. 847 (5) (55 SE2d 359).

"Wilful and continued desertion by either of the parties for the term of one year" constitutes a ground for divorce in this State. *Code* § 30-102 (7). This ground is explained in *Cagle v. Cagle,* 193 Ga. 34 (17 SE2d 75) as follows: "Desertion, within the meaning of our statute on divorce, is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification either in the consent or the wrongful conduct of the other. Its affirmative natural elements are two: the cohabitation ended, and the offending party's intent to desert. The statute creates a third affirmative element, the lapse of a definite period of time. Negatively, it must be without legal justification, and without a breach of the continuity which the statute renders essential."

■

We hold that there was evidence to support the verdict in favor of the wife on the question of desertion by her husband. It appears from the evidence that a controversy over religion between the parties had led to their separation. The wife had become a follower of a religious group known as the Jehovah's Witnesses. Her husband had long been a member of the Methodist Church in Rome, Ga. The wife testified as to the events immediately preceding the alleged abandonment and desertion of her by the appellant as follows: "Well, we had a wonderful dinner. He had gone to the Methodist Church, and our meetings are in the afternoon; and I had dinner ready for him when he came in, and we ate dinner. And I always study my Bible before I go to church, to the meetings. And he was playing solitaire in the living room, and I went in there and took my Bible down, and he began, 'Why are you reading that stuff,' and so on, and 'You are going crazy.' And finally he got so mad, he said if I ever went again that he would be gone when I got home. So I calmly said, 'Well I'm going this afternoon.' So when I got home he was gone, and has been gone ever since." She testified that he left on a Sunday late in January of 1961; that appellant moved back into the upstairs apartment in their house after about three months; that during this time he did not communicate with her or make an attempt at reconciliation; but that he came and got his clothes from her on two occasions. She further testified that she left the home of the parties on November 16, 1961 to take a job helping an elderly woman in her home with the intention of staying there only until Christmas, but that she has remained at this job ever since and appellant rented the apartment she had vacated after she left. She testified and appellant confirmed the fact that she had left a considerable amount of her clothes and personal items in the apartment which was rented to others by her husband with these clothes and items still there as she had left them.

The husband testified that he had left Mrs. Reagan and stayed in a hotel for about six to eight weeks "Because I was about to go crazy. She was running me crazy talking about that Jehovah thing to me all night long. I couldn't sleep—I couldn't sleep, and I had to get somewhere where I could rest

a little, so I could work." He stated that he had never left her with the intention of staying away forever. It appeared that when he moved back home into the upstairs apartment, Mrs. Reagan had the key to the downstairs apartment where she was staying and kept it locked most of the time. There was further testimony by him to the effect that he tried to effect a reconciliation and get Mrs. Reagan to come back to him. This was contradicted by Mrs. Reagan and by testimony of a married daughter of the parties, Mrs. Buck Ransom. Another married daughter, Mrs. Tom Sumerour, testified that Mr. Reagan had never asked her for Mrs. Reagan's address and this directly refuted the testimony of the appellant.

In conclusion, there is evidence which, although in conflict in some particulars, is sufficient to support the verdict in favor of the wife. The jury was authorized under the evidence to find that appellant left Mrs. Reagan, that he intended to desert her, that he acted without justification and that cohabitation was not resumed and that the desertion continued for a period of at least one year. Furthermore, even if the jury believed that appellant had offered to resume marital relations and that appellee had refused to do so, the verdict would be proper under the ruling in *Born v. Born,* 213 Ga. 830 (1) (102 SE2d 170) that "the questions of good faith on the part of the husband in making the offer and whether the refusal of the wife to resume marital relations was justified or not under the circumstances and the period of time when the desertion began, are all for the determination of the jury and cannot be resolved on demurrer."

■ The second assignment of error is upon the admission by the court, over the objection of the appellant, of the testimony of the wife that she had a will leaving all she had to her children, and that it was her intention on her death to leave what she had to her children. It appears that the court sustained appellant's objection to the wife's reference to her will on the ground that the will itself was the highest and best evidence of its contents, but permitted her to testify as to what her intention was with reference to disposing of her property upon her death. She then testified that she intended to

leave it to her children. The husband had testified earlier to the effect that she had asked him and tried to persuade him to make a will leaving their home to the Jehovah's Witnesses. The court did not err in admitting the testimony of the appellee since it was relevant to the question as to what disposition appellee would want Mr. Reagan to make of his property at his death and would tend to rebut his testimony that she tried to influence him to give the home to the Jehovah's Witnesses. This question would bear not only upon the credibility of appellant but upon the broader issue of the degree of his wife's involvement with the Jehovah's Witnesses. Such involvement, depending upon its degree, would bear upon the question whether the husband was justified in leaving her when he did and whether she would be justified in refusing to resume marital relations with him, if it is believed that he had tried to get them back together. Thus, its relevancy bears directly upon the main issues of the case and the testimony of appellee was properly admitted.

■ ■ The third and fourth assignments of error are respectively that the court erred in re-charging the jury except as to the form of the verdict and in making the following statement in its re-charge: "You must settle, gentlemen, in addition to the question of alimony, the question of to whom a divorce is to be granted. You can award alimony to the defendant wife only if you find in her favor for a divorce. If you award her alimony, and if you find in her favor for a divorce, you will then settle the question as to the house and lot, whether or not she is to get some of, any portion of, or all of the house and lot. Your verdict is not completed until you settle those three issues, and not the one issue." Appellant contends that the re-charge to the jury was confusing and misleading because it led the jury to believe that it could award appellee alimony irrespective of the question of divorce and was therefore prejudicial to appellant. It would appear that the jury was not so misled, as they awarded both alimony and a divorce to the wife. We also note that while parts of the re-charge do seem uncertain on this question, the statement therein that "You can award alimony to the defendant wife

only if you find in her favor for a divorce," is sufficient to clearly apprise the jury of their authority and resolve all confusion on the question.

Appellant contends that the language of the court in re-charging the jury that "You must settle . . ." and that "Your verdict is not completed until you settle those three issues, and not the one issue" was an instruction that the jury had the duty to settle the three issues (i.e. alimony, divorce, and the disposition of the house and lot) when the jury had no such duty under the law of Georgia. It is contended that if the jury returned a verdict granting the husband a divorce or one granting neither party a divorce, it would have settled only the question of divorce. Yet, under other portions of the charge, these verdicts would "settle" the questions of alimony and of the house and lot since they would constitute a finding that those questions be resolved in favor of the appellant.

We hold that the re-charge did not tend to confuse the jury, over-emphasize the matter of awarding alimony to the appellee, or impose an unlawful duty upon the jury, and therefore the trial court did not err in re-charging the jury.

*Judgment affirmed. All the Justices concur.*